[No. 4143.]

THE PEOPLE EX REL. THE COLORADO BAR ASSOCIATION
v. FRANK B. WEBSTER.

1. **Attorneys at Law—Disbarment—Failure to Pay to Client Money Collected—Alcoholism.**

In a disbarment proceeding against an attorney at law for collecting money for a client and failing to pay it over, an answer that he retained the money by reason of his negligence and carelessness, as a result of the disease of alcoholism with which he was afflicted, is no defense to the proceeding.

2. **Same.**

Where an attorney collected money for a client and failed to pay it. over, and the client failing to hear from the attorney placed the same account in the hands of another attorney for collection who brought suit against the debtor, and the attorney who had collected the money appeared in the suit for the debtor and filed a general demurrer to the complaint, he was guilty of unprofessional conduct for which he should be disbarred.

## Original Proceeding.

The ATTORNEY GENERAL and Mr. THOS. H. HARDCASTLE, for relator.

Mr. GEORGE S. REDD, for respondent.

Mr. JUSTICE STEELE delivered the opinion of the court.

Although there are four charges against the respondent, we shall consider that one only which alleges that he did, on or about July 15, 1899, receive from C. E. Bradford, of Alamosa, for The F. Mayer Boot and Shoe Company, of Milwaukee, the sum of twenty-five dollars, and on the 28th of August, 1899, from the same person and for the same firm, the sum of nine dollars and thirty-five cents; and that, although often requested, he has failed and refused to pay or remit or in anywise account to said company for said moneys.

The respondent admits that he received the amount of money charged in the complaint, but alleges that twenty-five dollars of the amount was not received until some time during the month of September, 1899, and that the sum of nine dollars and thirty-five cents was not received until September 25, 1899, and that on November 18, 1899, he remitted to the said company the amount so collected less the sum of four dollars and eighty-five cents, which amount he retained for his professional services. He further alleges that no demand was ever made for the said money and that he paid the same voluntarily and before he knew that proceedings were to be instituted against him. He also alleges that he retained the said money by reason of his negligence and carelessness, as the result of a disease known as alcoholism with which he was then affected; and that when he was under the influence of strong drink, "he had no will of his own, and was powerless to resist the temptation to drink alcoholic beverages."

The testimony shows that in July, 1899, the claim was sent to the Bank of Alamosa, with instructions to turn it over to the respondent for collection. The company had placed the claim in the hands of a collecting agency, and the agency, in turn, placed it in the hands of the respondent through the bank. After two or three months, not hearing from the respondent, the claim was placed in the hands of another attorney at Alamosa, who, on October 21, 1899, brought suit in the district court against Bradford to recover judgment for the sum of $35.85. On October 31 the respondent, as attorney for Bradford, filed a general demurrer; and on the 9th of December the cause was dismissed at the cost of the plaintiff.

We do not regard the statement of the respondent that he was so under the influence of strong drink that he had no mind of his own and was powerless to

resist the temptation to drink alcoholic beverages, and that for that reason he had become careless and negligent of his business, as even a mitigating circumstance in his case. It appears from the testimony that during all the time that he is alleged to have been an habitual drunkard, he was district atttorney of the twelfth judicial district of this state, was the county attorney of the county of Conejos, and was engaged in the general practice of his profession.

The respondent states that he did not intend to, and did not in fact, convert the money so received from Bradford to his own use, but that at all times he had money in his possession of an amount sufficient to pay the said claim on demand. It appears from the testimony that the secretary of the State Bar Association visited Alamosa for the purpose of investigating charges which had been preferred against the respondent, and that he visited the store of Bradford, took copies of receipts given by the respondent to Bradford for the money collected, and that within two or three days afterwards the respondent remitted to the company the amount collected from Bradford less his fees. There is no testimony to show that the respondent knew that the secretary of the bar association was in Alamosa for the purpose of investigating the charges, and we cannot say that the respondent made the remittance for the purpose of avoiding a prosecution at the hands of the association; but we have come to the conclusion, after carefully considering all the testimony, that the respondent's name should be stricken from the rolls. We base our judgment of disbarment not only upon the fact that the defendant retained the moneys of his client for an unreasonably long time under the peculiar circumstances of the case, but upon the fact that the respondent was guilty of unprofessional conduct in filing a demurrer to the complaint in the suit

brought by the company against Bradford. If, as he says, he had money in his hands at all times to pay the demand upon him if made, it is not conceivable to us that he should go to the additional expense of filing a demurrer to the complaint. Again, when suit was brought by another attorney upon the account against Bradford, it was the respondent's duty, upon being informed that such suit had been brought, to inform counsel that the claim had been settled. Instead of that, he filed a demurrer, for no other reason apparently than that of securing delay. The employment of the respondent to defend the suit against Bradford was the equivalent of a demand, and the respondent's duty to his client, inasmuch as he had the money with which to do so, required him to then and there make payment of the money he had collected. By filing the demurrer the respondent, in effect, concealed from his client the fact that the demand against Bradford had been paid; and in dealing with his client his conduct has not been fair, frank and open, but the contrary, and we think he has forfeited his right to practice law in this state.

In the respondent's answer he states that after suit was brought against Bradford, he notified counsel that the sum of $25.00 had been paid and that the sum of $9.35 would be paid in a short time; and that the sum of $25.00 was paid about the 1st of September, 1899, and that the sum of $9.35 was paid on or about the 25th of September, 1899. The record shows that the suit was not brought against Bradford until the 21st day of October, 1899, and the demurrer was not filed until the 31st of October, 1899; so that the respondent is mistaken, and at the time, according to his own admissions, when the suit was brought against Bradford he had collected the total amount of the claim.

Counsel cite the case *In re Lentz*, 65 N. J. Law

134, and claim that under the authority of that case the court is not warranted in entering a judgment of disbarment against the respondent. Proceedings were instituted against Lentz, an attorney of the state of New Jersey, eight or nine years after his alleged misconduct; and the court held that the circumstances shown did not warrant the conclusion that Lentz was unworthy of the confidence of clients, and therefore did not require the court to strike his name from the roll of attorneys or to suspend him from the practice of his profession. It appeared in that case that for the eight or nine years following the time of the alleged misconduct, the respondent had been guilty of no unprofessional conduct; and we think the court very properly held that after such length of time, when it appeared that the respondent, during the period, had conducted himself in a proper manner, he could not be forbidden to practice his profession. Indeed, a very much shorter period would be a bar to proceedings for disbarment in cases where it appears that the attorney against whom the proceedings are instituted has practiced his profession in an honorable and upright manner. But in this case the prosecution was commenced immediately after the commission of the offense, and the good conduct of the respondent pending such prosecution cannot be regarded as very strong evidence of reformation.

For the reasons given, the name of the respondent is ordered stricken from the roll of attorneys.